UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 510 |
| vs. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THOMAS P. FLANAGAN | ) | |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, Acting United States Attorney for the Northern District of Illinois, hereby presents its sentencing memorandum for defendant Thomas Flanagan.

## I.    Introduction

Defendant Thomas Flanagan used his position as a partner at the accounting firm of Deloitte & Touche to misappropriate material, nonpublic information belonging to Deloitte clients for the purpose of conducting illegal insider trading. Defendant's conduct occurred over the course of at least a year and a half and allowed him to reap approximately $420,000 in profits. Defendant's actions violated the fiduciary duty of trust and confidence he owed to Deloitte and to its clients. Defendant not only used the material, nonpublic information to purchase and sell securities himself, but also tipped some of the information to one of his sons so that his son could also purchase and sell securities. This resulted in defendant's son obtaining approximately $50,000 in illegal profits, and in him being charged in a civil action brought by the U.S. Securities and Exchange Commission. *See Securities and Exchange Commission v. Flanagan*, 10 CV 04885 (N.D. Ill.).

At the time defendant began misappropriating material, nonpublic information belonging to Deloitte clients, he was successful, highly educated, and had reached the pinnacle of his profession–achieving the status of a partner at a major public accounting firm. He was compensated far more than most people would ever dream. He had, by all accounts, a supportive and loving family. He was also active in civic and charitable endeavors. But despite all of that, defendant repeatedly engaged in fraud–a fraud involving the misappropriation of his clients' secrets that goes to the very heart of the auditor-client fiduciary relationship.

Insider trading cases, by their nature, are driven by arrogance and greed, and this case is no exception. Fueled by access to material, nonpublic information and the desire to use it for their benefit, defendants in insider trading cases cause significant harm to capital markets and to individual investors on the other side of trades. A sentence of incarceration is needed in this case to deter those with access to inside information from using it to illegally trade. Simply put, defendant is the exact type of defendant and committed the exact type of crime where general deterrence matters. If defendant is sentenced to a term of incarceration at the low-end of the advisory Guidelines range in this case, the next individual contemplating engaging in insider trading may think twice about going through with it. The message this Court can send with a sentence of 37 months' imprisonment is clear: if you commit insider trading, particularly the type of insider trading in which you violate a fiduciary duty of trust to your employer and its clients, you will lose more than your profits–you will lose your liberty.

2

## II.    Application of § 3553(a) Factors

### A.    Legal Standards

The parties and the Probation Department agree that the properly calculated advisory Sentencing Guidelines range is 37 to 46 months' imprisonment.  District courts must take the Guidelines into account in calculating a defendant's sentence.  *See Booker v. United States*, 125 S.Ct. 738, 767 (2005).  Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Sentencing Guidelines are the sole factor in Section 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, Section 3553(a)(6).  *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.").

The Court must also consider the factors set forth in Section 3553(a) in determining a sentence that is sufficient, but not more than necessary, to achieve the goals of sentencing. In particular, Section 3553(a) requires the Court to consider, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence; (4) any pertinent policy statements issued by the Sentencing Commission; and (5) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. §

3

3553(a).

These factors, taken together, weigh in favor of a sentence at the low-end of the advisory Sentencing Guidelines range. In particular, the nature of defendant's crime and the need for general deterrence strongly favor such a sentence. Factors that defendant has raised in his version of the offense, including his wife's health and the collateral consequences of his actions, do not outweigh the other Section 3553(a) factors enough to justify the six month sentence that defendant seeks.

**B.     The Nature of Defendant's Crime Weighs Strongly in Favor of a Sentence at the Low-End of the Guidelines**

Defendant's conduct in this case weighs strongly in favor of a sentence at the low-end of the advisory Sentencing Guidelines range for a number of reasons. First, defendant's misappropriation of inside information occurred over an extended period of time and involved multiple different Deloitte clients. Defendant had access to material, nonpublic information because he was a Deloitte partner assigned to Deloitte engagements with Walgreens, Sears, Motorola, and Best Buy. In the course of his duties, defendant had regular contact with employees of those companies and had access to information such as earnings results and acquisition targets that Deloitte employees were privy to in order to conduct audits for the companies or to provide consulting advice.

Much like an attorney, defendant's regular access to this type of information came with the responsibility that he keep it confidential and not use it for his own personal gain. Information about a company's earnings results or acquisition targets is highly valued and

4

highly sought after in the market place. When publicly released, it often significantly affects a company's stock price. Defendant was someone that both Deloitte and its clients thought they could trust with this material, nonpublic information. That was not true. This renders defendant's conduct more serious because it involved calculated and repeated efforts to trade on inside information and attacked the core of trust on which the audit-client relationship is based.

Second, the nature and circumstances of defendant's offense are aggravated because defendant's conduct implicated his family members. In particular, as noted above, defendant tipped some of the material, nonpublic information he obtained to one of his sons in order to allow his son to illegally profit from purchasing and selling securities. Though his son was not charged with any criminal offense in this case, he was sued in a civil enforcement action brought by the SEC.

Defendant also conducted much of his insider trading in accounts he controlled under the names of other sons or under the name of his wife's family trust, for which he served as the trustee. Such actions were designed to hide from Deloitte and regulatory agencies defendant's insider trading, but also served to cause individuals completely uninvolved in the scheme to at least initially fall under an umbrella of suspicion, which this Court should consider when evaluating defendant's actions. There is no evidence that defendant's sons whose accounts he used or the beneficiaries of the trust had knowledge of defendant's actions, but he necessarily caused investigative resources to be focused on them by using accounts in their names to conduct his illegal trading.

Third, defendant took other sophisticated steps to hide his insider trading from individuals at Deloitte. For example, defendant submitted to Deloitte personnel who prepared his personal federal and state income taxes false information regarding his trading activities. While defendant accurately reported the gains on all transactions, he listed trades in other companies in place of Walgreens, Best Buy, and Sears, so that he could hide that he had interest in, and was trading based on inside information of, Deloitte clients in which he was restricted from conducting *any* securities trading.

Finally, at the time defendant committed his crimes, he was a partner at one of the largest accounting firms and misappropriated information he had access to from publicly-traded Fortune 500 companies. Thus, the victim in this case is not only the capital markets themselves, but also includes Deloitte, who suffered the reputational damage of having a partner breach his fiduciary duty to clients, and the clients themselves whose confidential information was misappropriated. That makes this case much more than a garden-variety insider trading case, and it should be reflected in defendant's sentence.

### C. Defendant's History and Characteristics Do Not Outweigh the Serious Nature of the Crime at Issue

In his version of the offense, defendant focuses his argument for a sentence substantially below the advisory Guidelines range on his community and charitable service, issues regarding his wife's health, and the collateral consequences of his conviction. Certainly the Court can consider all of these issues as mitigating factors in determining defendant's sentence. But these issues do not rise to the level in which they outweigh other

§ 3553(a) factors or other of the defendant's characteristics to justify the sentence defendant

seeks.

Defendant details his community and charitable service in his version of the offense.

While his acts are commendable, the Court should keep in mind that defendant's wealth and

the very position of trust at Deloitte that he abused afforded him the opportunity to act so

generously. As the Seventh Circuit has stated:

> Wealthy people make gifts to charity. They are to be commended for doing
> so but should not be allowed to treat charity as a get-out-jail card . . . .
> [C]haritable works must be exceptional before they will support a more-lenient
> sentence, for . . . it is usual and ordinary, in the prosecution of similar white
> collar crimes involving high-ranking corporate executives . . . to find that a
> defendant was involved as a leader in community charities, civic
> organizations, and church efforts. People who donate large sums because they
> can should not gain an advantage over those who do not make such donations
> because they cannot.

*United States v. Vrdolyak*, 593 F.3d 676, 682-83 (7th Cir. 2010) (internal citations omitted).

With respect to defendant's wife's health and the collateral consequences of his

conviction, the Court must weigh these issues not only against the other § 3553(a) factors,

but also against defendant's other characteristics. In particular, defendant chose to repeatedly

commit fraud not because of financial need but instead based on greed and arrogance. *See,*

*e.g.*, *United States v. Anderson*, 517 F.3d 953, 966 (7th Cir. 2008) (noting that district court

considered that defendant was "well off financially and could have relaxed and enjoyed his

golden years" and that "[w]hile many criminals commit crimes from lack of opportunity and

desperation, [defendant] acted out of greed."). Defendant is highly educated and was a

successful professional. He graduated Magna Cum Laude from the University of Notre

7

Dame with a degree in business administration-accountancy. He then obtained a Master of Business Administration degree from Northwestern University, graduating with distinction. He was a licensed Certified Public Accountant from 1970 to 2010, and began working at Deloitte in 1970. He was a partner from 1978 to 2010. Defendant's education, experience, and financial condition make clear that he absolutely knew better than to do what he did, and his crimes are all the more egregious given his stature in society.

The situation regarding defendant's wife's health and the collateral consequences of his conviction are unfortunate, but do not materially differ from circumstances that each and every defendant sentenced by the Court faces. That is why, presumably, with respect to family needs, the Sentencing Commission has expressed in a policy statement that family ties and responsibilities are "not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Moreover, with respect to the collateral consequences of defendant's conviction, those collateral consequences are similar to those faced by every white-collar defendant, and do not serve as an individualized mitigating factor related to defendant.

### D. A Sentence at the Low-End of the Guidelines Will Provide Adequate Deterrence to Others

The need to afford adequate deterrence to others is a critical part of the sentence to be imposed in this case for a number of reasons. First and foremost, insider trading is the exact type of crime in which deterrence matters. Insider trading is often a crime committed by affluent and well-educated defendants. In this case, as in most insider trading cases, it was

not a crime of need or passion. It was a crime based on greed and an arrogant belief that defendant would not be caught. Crimes of this nature can be deterred with punishment that includes terms of incarceration. Other would-be defendants who are thinking about using their positions of trust to misappropriate material, non-public information will think twice if they believe their actions will have serious consequences. These consequences cannot simply be disgorgement of ill-gotten gains or the payment of fines. Instead, the consequences need to include more than mere token sentences of incarceration to be effective in deterring others.

Similarly, because insider trading cases are difficult to detect and prove, it is also particularly important that sentences in this and other insider trading cases serve to deter individuals from committing the same crime. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

A sentence at the low-end of the Guidelines serves the goal of deterrence in this case. Such a sentence would be a strong message to other would-be insider trading defendants that their conduct is serious and will be punished accordingly.

### E.     Policy Statements from the Sentencing Commission Favor a Sentence at the Low-End of the Guidelines

Policy statements from the Sentencing Commission, along with recent proposed amendments to the Sentencing Guidelines based on Congressional directives, make clear that insider trading is a crime warranting a significant sentence of incarceration. The Commission's policy as to white-collar offenses such as insider trading is set forth in Guideline Chapter 1 Part A, introductory comment 4(d):

> Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are "serious."
>
> The Commission's solution to this problem has been to write guidelines that classify as serious many offenses for which probation previously was frequently given and provide for at least a short period of imprisonment in such cases. The Commission concluded that the definite prospect of prison, even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm.

As further elaborated by then Circuit Judge, now Supreme Court Justice, Stephen Breyer, who served on the Sentencing Commission when the Guidelines were drafted:

> A second area of traditional compromise involves the Commission's decision to increase the severity of punishment for white-collar crime. The Commission found in its data significant discrepancies between pre-Guidelines punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft. The Commission's statistics indicated that where white-collar fraud was involved, courts granted probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate the inequities of these discrepancies, the Commission decided to require short but certain terms of confinement for many white-collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

10

Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 20-21 (1988).

The Sentencing Commission's sentencing philosophy on white-collar cases is further reinforced through amendments the Sentencing Commission has proposed to the Guidelines, including a proposed amendment to § 2B1.4, the insider trading guideline. The amendments stem from the Dodd-Frank Wall Street Reform and Consumer Protection Act, which directed the Sentencing Commission to amend the Guidelines related to securities fraud to, among other things, emphasize the effectiveness of incarceration in deterring others. *See* Pub. L. 111-203, Section 1079A(a)(1)(B)(i)(I)-(III) (2010).

Pursuant to the Dodd-Frank Act, the Sentencing Commission has proposed amendments to Guideline § 2B1.4. *See* United States Sentencing Commission, Amendments to the Sentencing Guidelines, at 2, April 30, 2012, available at http://www.ussc.gov/Legal/Amendments/Reader-Friendly/20120430_RF_Amendments.pdf. The amendments provide a new specific characteristic for offenses involving an "organized scheme to engage in insider trading." *Id.* In such circumstances, a defendant's minimum offense level would be 14. According to the Commission, the amendment "reflects the Commission's view that a defendant who engages in considered, calculated, systematic, or repeated efforts to obtain and trade on inside information (as opposed to fortuitous or opportunistic instances of insider trading) warrants, at a minimum, a short but definite period of incarceration." *Id.*

11

While the amendment would not change defendant's advisory Guidelines range in this case because of the amount of defendant's gain, it is still instructive because it shows that when, as here, a defendant's conduct is part of a considered, calculated, systematic, or repeated effort to obtain and trade on inside information, and not based on happenstance, a more serious sanction is warranted. Indeed, pursuant to the amendment, a defendant who engages in illegal insider trading and receives *no* gain would have an offense level of 12 with acceptance of responsibility. That would correspond to an advisory Guidelines range of 10-16 months' imprisonment, higher than the sentence defendant seeks in this case even though he gained nearly $500,000 from his pattern of illegal insider trading involving a significant breach of his fiduciary duty owed to his employer and its clients.

### F.     The Need to Avoid Unwarranted Sentencing Disparities

Defendant, in his version of the offense, argues that the need to avoid unwarranted sentencing disparities strongly favors a sentence substantially below the Guidelines range. In support, defendant cites Sentencing Commission statistics showing that, for example, in 2011 approximately 70% of non-cooperating defendants in insider trading cases received sentences below the advisory Sentencing Guidelines range.

Defendant, however, fails to explain how sentencing him below the advisory Guidelines range based on these statistics actually promotes avoiding unwarranted sentencing disparities. In fact, Seventh Circuit case law is expressly to the contrary. As the Seventh Circuit has stated, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *See United*

12

*States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).

Moreover, defendant's argument does not account for the fact that because a defendant's gain correlates to the length of the defendant's Guidelines range, some insider trading cases may result in very long advisory Guidelines ranges, which some judges may find longer than necessary to achieve the goals of sentencing. By way of example, the report defendant cites in his version of the offense notes the sentences for Zvi Goffer and Raj Rajaratnam, defendants in separate insider trading cases prosecuted in the Southern District of New York. Goffer received a ten year sentence, one month below the 121 to 151 month advisory Guidelines range in his case. Rajaratnam received an eleven year sentence, below the 235 to 293 month range called for under the advisory Guidelines. Those cases, and others in which below-Guidelines range sentences were imposed, could be a product of a substantial sentence of incarceration that falls below the advisory Guidelines range because the range itself is very high.

By contrast, in this case, defendant's advisory Guidelines range of 37 to 46 months' imprisonment provides an accurate barometer for defendant's prolonged fraudulent conduct and his egregious breach of his fiduciary duty to his employer and its clients. Defendant abused a position of trust and a fiduciary duty to his clients when he repeatedly traded based on inside information he misappropriated. His conduct resulted in profits to himself of nearly $420,000 and to one of his sons of nearly $50,000. Under those circumstances, a sentence of 37 months' imprisonment is both appropriate and reasonable under the § 3553(a) factors.

13

III.   **Conclusion**

For the reasons stated above, the government respectfully asks that the Court sentence

defendant at the low-end of the advisory Guidelines range of 37 to 46 months' imprisonment.


Respectfully submitted,

GARY S. SHAPIRO
Acting United States Attorney

By:   /s/ Jason A. Yonan
      JASON A. YONAN
      Assistant U.S. Attorney
      219 South Dearborn St., Rm. 500
      Chicago, Illinois 60604
      (312) 353-4156

Dated: October 19, 2012